UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA LOPEZ,<br><br>     Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>     Defendant. | Case No. CV 13-4198-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI") benefits. She claims that the Administrative Law Judge ("ALJ") erred when he found that she was not credible, rejected the opinion of her treating doctors, and failed to include all of her functional limitations in his residual functional capacity determination. For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

II.

SUMMARY OF PROCEEDINGS

On January 7, 2009, Plaintiff applied for SSI, alleging that she had been unable to work since January 1, 1990, due to cardiac arrhythmia; syncopal episodes; seizure disorder; hepatitis C; pain in her knee, lower back, and hip; and depression, anxiety, and paranoia. (Administrative Record ("AR") 103, 141-46, 160.) After her application was denied initially and on reconsideration, she requested and was granted a hearing before an ALJ. (AR 103-12, 114-22, 124-28.) On July 5, 2011, she appeared with counsel and testified at the hearing. (AR 78-102). On October 12, 2011, the ALJ issued a decision denying the application. (AR 21-28.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-6.) This action followed.

III.

DISCUSSION

A.  The ALJ's Credibility Determination

Plaintiff contends that the ALJ failed to provide adequate reasons for rejecting her testimony. (Joint Stip. at 33-39.) For the following reasons, the Court agrees.

ALJs are tasked with judging the credibility of claimants. In making these credibility determinations, they may employ ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But, where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are

supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that she is in pain most of the time, that her right knee swells up and makes it difficult for her to walk without a cane, and that her hands swell up and get numb. (AR 84, 85.) She reported that she cannot hold an item for longer than 30 seconds because of the pain in her hands and fingers. (AR 93.) She further explained that she gets depressed, forgets to take her medications, and gets lost in the aisle when she visits the grocery store. (AR 85, 88, 89.) She reported that she does not go out alone because she is afraid that she will forget where she is and spends more than half of the day in bed due to her pain and depression. (AR 90, 94.) Despite this testimony, the ALJ found that Plaintiff could lift and carry ten pounds frequently and 20 pounds occasionally; stand or walk for up to six hours in an eight-hour workday; and perform simple routine tasks, provided that they involved only limited public and co-worker contact. (AR 24, 26.) Plaintiff contends that this was error.

The ALJ's first reason for rejecting Plaintiff's testimony was that it was inconsistent with the "objective medical record or records from treating and examining physicians[.]" (AR 26.) This explanation is not specific enough to withstand scrutiny. The ALJ was required to identify the testimony that was unbelievable and specify the medical evidence that undermined it. *See, e.g.*, *Treichler v. Comm'r of Soc. Security*, 775 F.3d 1090, 1102-03 (9th Cir. 2014).

The ALJ also questioned Plaintiff's testimony because he found that the medical record did not reflect any psychiatric hospitalizations, psychotropic medications, surgeries, or strong pain medication.

(AR 26.)  The record supports the ALJ's finding that Plaintiff has never been hospitalized for psychiatric reasons or undergone surgery. Moreover, prison records from 2008 show that Plaintiff had declined treatment for her foot--injections, anti-inflammatory medications, and steroids--(though she did inquire about the possibility of surgery). (AR 289.)  As such, these were legitimate reasons for questioning Plaintiff's testimony.  *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (holding ALJ may use claimant's failure to seek treatment as basis for finding complaint exaggerated).

As to the medications, however, the record does not support the ALJ's finding.  Plaintiff's psychiatrist noted that she had "been tried on a variety of psychotropics, including Zyprexa, Sinequan, Buspar, Prozac." (AR 487-88.)  Plaintiff testified that she was currently taking Zoloft and Abilify.  (AR 89.)  Furthermore, the records show that Plaintiff had also been prescribed strong pain medication, including Oxycontin/Oxycodone, Percocet, and Meloxicam in the past.  (AR 241, 242, 423, 470-71.)  The ALJ erred in finding to the contrary.

The ALJ also found that Plaintiff's daily activities were inconsistent with an inability to perform any work.  (AR 26.)  In general, this is a legitimate reason for questioning a claimant's testimony.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The extremely limited activities described by Plaintiff, however, like watching "some" television, spending time with her brother's dog, and attempting to read and clean her room, do not undermine her testimony that she could not work.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (rejecting adverse credibility finding where claimant

engaged in activities "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace.").

     Plaintiff testified that her doctor had prescribed her a cane and a brace. (AR 83, 92.) The ALJ found that this was untrue and that the consultative examiner had deemed them unnecessary. (AR 26.) The record supports these findings.

     The examining doctor concluded that Plaintiff did not need a cane except when walking long distances. (AR 389.) And Plaintiff is unable to point to anywhere in the record where a doctor prescribed a cane. Instead, she points to a March 2008 chart note from a prison doctor who classified her as having a mobility impairment and noted that she was using a cane. (AR 309.) This is not evidence that she was prescribed a cane.

     As to her bracing, though a May 2008 note records that she had been treated with bracing, presumably for her knee, it appears that that information came from her. (AR 294.) Here, again, Plaintiff has not pointed to anywhere in the record where a doctor prescribed her bracing.

     In the end, the Court rejects three of the reasons offered by the ALJ for questioning Plaintiff's testimony and accepts two. The issue that remains is whether the ALJ's credibility finding should be upheld despite these errors. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding error by ALJ in credibility determination is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion."). The Court concludes that remand is warranted here

because it finds that the ALJ's remaining reasons are not enough to support the credibility finding on their own.

B.   The Treating Physicians' Opinions

Plaintiff contends that the ALJ erred in rejecting the opinions of her treating physician, Preston Arndt, and treating psychiatrist, Gerald Correa.  The Court concludes that there is merit to Plaintiff's argument about Dr. Correa but not Dr. Arndt.

It is the province of the ALJ to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors supply that evidence: treating doctors, examining doctors, and reviewing doctors.  All other things being equal, treating doctors' opinions are entitled to the greatest weight because these doctors are hired to cure and have more opportunity to know and observe the patient.  *Id.* at 1041; *see also* 20 C.F.R. 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations").  Examining doctors are next on the list, followed by reviewing doctors.  *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  ALJs, however, are not required to merely accept the opinion of any doctor and, where the opinion is contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id.* at 830.

In June 2011, Dr. Arndt opined that Plaintiff's physical ailments and pain would essentially preclude all work because they would limit

her to lifting less than ten pounds; sitting, standing, and walking for less than two hours in an eight-hour day; using her fingers, hands, and arms for no more than five percent of the time in the course of a workday; and cause her to be absent from work more than four days each month. (AR 452-57.) Dr. Correa found that Plaintiff's mood disorder, polysubstance dependence, and personality disorder rendered her "extremely limited" in her ability to understand, remember, and carry out even simple instructions; deal with the public; maintain concentration and attention for at least two-hour increments; and withstand the stress and pressures of an eight-hour workday. (AR 459.)

The ALJ gave little weight to these opinions, favoring instead the opinion of examining internist Sodagar-Marvasti--who determined that Plaintiff could perform the physical activities for light work-- and examining psychologist Lauren Thomas--who found that Plaintiff could perform simple and repetitive tasks and maintain regular attendance at work.[1] (AR 382-83, 389.)

The ALJ cited several reasons for rejecting the treating doctors' opinions. First, he found that there was no medical evidence to support the limitations they assessed. (AR 26.) As the Court explained above with regard to the ALJ's credibility finding, however, generalized findings are insufficient to support such a conclusion. *See, e.g., Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)

---

[1] Dr. Thomas also found, however, that Plaintiff's ability to accept instructions and interact with coworkers and the public would be limited. (AR 383.) She further opined that Plaintiff "may be stunted in her ability to perform the usual functions that people perform due to her lengthy history of incarceration, severe substance abuse issues, and anger management problems[,]" without identifying what those functions might be. (AR 383.)

(holding ALJ's reasons for rejecting doctor's opinion not clear and convincing where ALJ "merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects").[2]

The ALJ also rejected the treating doctors' opinions because the doctors had provided limited and conservative treatment. (AR 26-27.) This is a legitimate reason for rejecting a treating doctor's opinion, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), and, at least with respect to Dr. Arndt, is supported by the record. While in prison, Plaintiff inquired about having foot surgery but was told that she could not have it in part because she had refused more conservative treatment. (AR 289.) After she was released, she apparently did not seek any treatment from Dr. Arndt for her allegedly disabling pain other than medication. The ALJ was entitled to consider this fact in evaluating Dr. Arndt's opinion.

The ALJ's finding is not so persuasive with regard to Dr. Correa's psychiatric opinion. Dr. Correa saw Plaintiff on several occasions between November 2009 and July 2011, during which time he adjusted her medication in an attempt to respond to her complaints about changes in her condition. For example, in November 2009 he

---

[2] Additionally, the record contradicts the ALJ's finding that there was "no" medical evidence to support the treating doctors' opinions. In addition to the pain medication use noted above, X-rays showed osteoarthritic changes in Plaintiff's right knee (AR 279, 294), and narrowing, sclerosis, and sesamoiditis in her right foot. (AR 259, 290.) Moreover, even though Dr. Sodagar-Marvasti's conclusion regarding Plaintiff's limitations differed from Dr. Arndt's, she agreed that Plaintiff had been suffering from arthritis for years and that she had crepitus on her right knee. (AR 385, 388.)

prescribed Neurontin and Zoloft again and added Abilify to address the fact that she was having auditory hallucinations. (AR 488.) In December 2009, Plaintiff reported that she was doing "really well" on Abilify. (AR 487.) By April 2010, however, Plaintiff told Dr. Correa that she was feeling more "antsy" and more depressed and that her hallucinations had returned, in response to which he increased her dosage of Abilify and Zoloft. (AR 485.) In July 2010, Dr. Correa noted that the medications were working well. (AR 484.) During this period, Plaintiff was also attending therapy sessions. (AR 477-79.)

There is no indication in the record that there was a more aggressive regimen to treat Plaintiff's psychiatric ailments and that Dr. Correa failed to offer it or that he did and that Plaintiff refused it. As such, the ALJ's finding that Dr. Correa's opinion was suspect because he had treated Plaintiff conservatively is rejected.

The ALJ also found that the treating doctors' opinions less persuasive because they were contained in check-the-box forms. (AR 27.) This is partially true. For example, Dr. Arndt did fill out and submit a one-page, check-the-box form that contained his opinion. (AR 452.) But he also filled out a lengthier form in which he explained his opinion in some detail. (AR 453-57.) Further, it appears from the face of the one-page form that it was an Agency form. (AR 452.) It does not seem fair for the Agency to argue that a doctor's opinion is suspect because it is contained on a check-the-box form that was created for that purpose by the Agency. And, besides, Dr. Arndt also submitted his chart notes and medical records, which contain additional information regarding Plaintiff's treatment. (AR 461-70.)

A similar analysis applies to Dr. Correa's opinion. Though it is contained in a one-page, check-the-box form, it appears to be a Social

Security form. (AR 459.) And Dr. Correa, too, submitted treatment records documenting Plaintiff's care. (AR 473-96.)

The ALJ also noted that the examining doctors were specialists in their respective fields. But Dr. Correa is a psychiatrist and is at least equally as qualified to render an opinion as examining psychologist Thomas. (AR 459.) Further, though it is clear that Dr. Sodagar-Marvasti is an internist, presumably the right type of specialist to address body pain issues, it is unclear what if any specialty Dr. Arndt has.

In the final analysis, the Court concludes that the ALJ did not set forth persuasive reasons for rejecting Dr. Correa's opinion but did for Dr. Arndt's. On remand, and in light of the Court's determination regarding the credibility issue, the ALJ should reevaluate Dr. Correa's opinion and determine what weight if any to give it in determining whether Plaintiff is disabled. In reassessing the medical evidence, the ALJ may, if he chooses, also reconsider Dr. Arndt's opinion as well.

C.   The Residual Functional Capacity Determination

Plaintiff contends that the ALJ erred by failing to consider all of the limitations supported by the record and to incorporate those limitations into the residual functional capacity finding and the hypothetical question to the vocational expert. (Joint Stip. at 16-26.) For the following reasons, the Court agrees.

A hypothetical question that does not include all of a claimant's restrictions is legally inadequate. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The ALJ may, however, limit a hypothetical to only those restrictions that are supported by

substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

Plaintiff contends that, although the ALJ purported to accept the examining psychologist's opinion, he did not include all of that doctor's findings in the residual functional capacity determination or in the hypothetical question to the vocational expert. She complains that the examining doctor concluded that Plaintiff would be limited in her ability to accept instructions from supervisors and "may be stunted in her ability to perform the usual functions that people perform due to her lengthy history of incarceration, severe substance abuse issues, and anger management problems." (AR 383.)

The record supports this argument. The examining doctor made these findings and the ALJ purportedly accepted the examining doctor's opinion. The ALJ, however, offered no explanation as to why these limitations were not included in the residual functional capacity finding and the hypothetical question to the vocational expert. On remand, the ALJ should take another look at this issue.[3]

Plaintiff also contends that the ALJ erred when he failed to include Dr. Arndt's limitations in the residual functional capacity finding and the hypothetical question to the vocational expert. (Joint Stip. at 24.) The ALJ was not required to do so, however, because he rejected Dr. Arndt's opinion. *See Robbins*, 446 F.3d at 886.

Plaintiff argues that the ALJ's finding that she had the residual functional capacity to perform simple routine tasks is incongruent

---

[3] Similarly, on remand the ALJ should consider whether the residual functional capacity determination adequately captures the limitations found by internist Sodagar-Marvasti. (AR 389.)

with his finding that she had "moderate" difficulties in concentration, persistence or pace.  Though the Court would agree that a finding that a claimant is moderately limited in concentration, persistence, and pace is, arguably, inconsistent with a finding that she can perform simple, routine tasks, the two are not necessarily mutually exclusive.  *See Hoopai v. Astrue*, 499 F.3d 1071, 1075-77 (9th Cir. 2007) (affirming ALJ's finding that claimant could perform full range of light work despite doctor's determination that claimant had moderate limitation in ability to maintain concentration, persistence, and pace).  Nevertheless, the ALJ should revisit this issue on remand as well.[4]

---

[4] Plaintiff requests that the Court credit her testimony as true, accept the improperly rejected medical evidence, and remand for an award of benefits.  The Court recognizes it has the authority to do so but concludes that there are numerous questions that must be answered before it is clear whether she is disabled and, therefore, entitled to benefits.  *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (noting district court is only required to remand for benefits when record has been fully developed, further proceedings would serve no purpose, and ALJ would be required to find claimant disabled on remand).  To begin with, though the Court has overruled the ALJ's credibility finding, it has not concluded that Plaintiff is credible.  Rather, it has concluded that the reasons the ALJ cited for questioning her credibility are not valid and/or are not enough to uphold the finding.  The same is true regarding the Court's findings regarding the medical evidence.

IV.

CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: February 23, 2015

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\LOPEZ, 4198\Memo Opinion and Order.wpd